Curia, per Richardson, J.
-The motion for a new trial assumes, that in charging the jury, the Circuit Judge mistook the law of the case. The Court is, therefore, to consider the objections to the Judge’s charge.
First, then, was the Judge mistaken, in charging the jury, that Berry Powell was a special and limited agent of the plaintiff; that is, to carry the raft and deliver it, but not to sell it, as a general agent might have done?
On this head, the evidence was explicit — Berry Powell was employed to carry the raft to Georgetown to be sold by Mr. Waterman. Bis agency was therefore specific, because limited to carrying the raft to another agent to sell. Berry Powell had, therefore, no general control, which plainly excludes him from selling. It is therefore plain, that the Judge could not charge, that to sell was within the scope of his confined authority to carry the raft to Waterman.
The Judge says, whoever bought the raft of B. Powell, took it upon his own responsibility or that of the carrier alone, and not upon that of the owner. And the sale by B. Powell being under an assumed authority, could not destroy the right of property in the owner.
This part of the judicial charge stands upon this established legal principle, that no man can be deprived of his property but by his own act and consent, or by the act of his authorized agent, (of course I speak not of cases of fraudulent imposition, or of judicial compulsion, &c.)
The principle just noticed is to guard the rights of property, and applies as well to rafts or logs, as to negroes, gold, or other goods.
There is but the one legal principle for all such cases, involving the right to personal chattels; and the Judge recognized it as properly applicable to rafts.
The first and second grounds of the appeal are then, as far as legal principles are involved, evidently mistaken. But the second ground would, further urge, that there is some pe *430 culiarity in rafting it, in the “commodity and employment,” tha.t pre-supposes in the carrier a right to sell the raft, because he is employed to carry it.
But I can perceive no sufficient reason for any such distinction in favor of the carriers of timber — whether by raft, boat, or land carriage — they are no more than carriers.
Men, doubtless, very often buy rafts as they do, still oftener, buy hogs, cattle, horses, poultry, and even negroes, of the person in immediate possession, with little or no enquiry about the title of the vendor; and it seldom turns out the purchaser is deceived. But when the rare exception occurs, the frequent practice of such confidence in the immediate occupants, cannot make such sales, like those made in market overt, good against the proper owner, willing or unwilling. We have no such law for particular places or goods.
This exposition of settled law fully answers the third ground, to wit: That Mr. Buck was justified, and is protected, in his purchase of the raft by the possession and the pretended ownership of B. Powell. If once allowed, the practice would amount to this: that a raftman may, by his own assumption, erect a market overt, when he pleases, on the bank of the river; simply because raftmen usually sell their rafts; and because men, as said by the witness, Thompson, do not usually enquire into the title of the seller; and when, in fact, the like confidence is practised by a great majority of purchasers of all goods.
To allow such effect in any particular case, the evidence should amount to proof of a particular usage. But such a practice, in order to constitute an exception to tVie general rule of law, should be so proved as to evidence the concurrence and assent of the owners, as well as that of the carriers and purchasers; and we have no evidence in this case that would evince any such concurrence, and so amount to what is called an usage ; which constitutes a legal exception to a rule of law, by the general concurrence of all concerned.
The last ground of the appeal assumes that the plaintiff, ky employing such a knave as Berry Powell, ministered to fraud committed by him upon Buck; and the Judge ought to have charged, that the plaintiff was liable for the fraud of his agent.
Doubtless, any man, by employing a known knave, may make himseíf liable for a fraud committed upon an ignorant stranger. But what is the evidence % It is, that both parties knew the character of B. Powell equally well, and the question of imputing to the principal the fraud committed in this case by the agent, has been passed upon by the jury, and is conclusive on that head.
The motion is therefore dismissed.
O’Neall and Frost, JX concurred.

Motion refused.